UNITED STATES BANKRUPTCY COURT                          NOT FOR PUBLICATION
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
In re:                                                  Chapter 11

MARKETXT HOLDINGS CORP.,                                Case No. 04-12078 (ALG)

                       Debtor.

---------------------------------------------------------------x

A P P E A R A N C E S:

WINDELS MARX LANE & MITTENDORF, LLP
Attorneys for Alan Nisselson, Chapter 11 Trustee
       By:    Howard L. Simon, Esq.
156 West 56th Street
New York, New York 10019

KAYE SCHOLER LLP
Attorneys for the Official Committee of Unsecured Creditors
       By:    Lester M. Kirshenbaum, Esq.
                Margarita Y. Ginzburg, Esq.
425 Park Avenue
New York, New York 10022

SCHRADER & SCHOENBERG, LLP
Attorneys for Subash Seth and Neil Seth
       By:    Bruce A. Schoenberg, Esq.
711 Third Avenue, Suite 1505
New York, New York 10017

**ALLAN L. GROPPER**
**UNITED STATES BANKRUPTCY JUDGE**

### (AMENDED) MEMORANDUM OF OPINION

The Debtor, through its Chapter 11 trustee, and its Official Committee of

Unsecured Creditors (collectively, "Movants"), move for summary judgment disallowing

the proofs of claim filed by Neil Seth ("Neil"), a former employee of the Debtor, and his

father, Subash Seth ("Subash"), each in the amount of $250,000. The material facts are

1

not disputed. Neil Seth began working for the Debtor in May 1999 as a trader. In 2000, Neil and Subash met with Omar Amanat, the Debtor's principal, and they "subsequently invested" in the company. (Deposition of Neil Seth dated September 6, 2007 (hereinafter "Neil Dep.") at 46:14-15.) Neil wrote two checks, one for himself and one for his father, dated April 19, 2000, for $250,000, each to T.Com Holdings.[1] Both checks bear a notation that they are for investment—one check reads "Tradescape investment" in the memo line; the second "Investment for Subash Seth" (emphasis in original) (Movant's Statement of Undisputed Facts (hereinafter "SOF"), Exh. 1 and 2.) The Debtor cashed the checks.

Also on April 19, 2000, Neil executed two Stock Purchase Agreements (the "Purchase Agreements")—one for himself, and one for his father, with his father's authority. (Neil Dep. at 48:11-23; Deposition of Subash Seth dated September 6, 2007 (hereinafter "Subash Dep.") at 31:3-13.) The Purchase Agreements also bear Omar Amanat's signature on behalf of the Debtor. The Purchase Agreements each provide for the purchase of 50,000 shares of stock of T.com Holdings, LLC. They contain representations and warranties by the Seths that they were acquiring the stock for investment purposes, that they knew the stock was not registered under the Securities Act of 1933, that they were accredited investors who could afford a complete loss of their investment, and that they understood there were constraints on their right to sell, transfer, assign or pledge the stock. The Purchase Agreements also contain a condition precedent to closing, that "the Shareholders Agreement shall have been signed and delivered by Tradescape and the other parties thereto in the form substantially as set forth in Exhibit

---

[1] This was one of the names used by the Debtor; the Debtor went through many name changes over several years. For a brief background, *see* this Court's opinion in *Nisselson et al. v. Empyrean Inv. Fund et al.* (*In re MarketXT*), 376 B.R. 390, 396 (Bankr. S.D.N.Y. 2007).

2

A." (Purchase Agreement, ¶ 5(a).) This condition could be waived. *Id.* Exhibit A to the Purchase Agreement is blank except to indicate that Exhibit A is a form of Shareholders Agreement. The Seths claim they "never received a form of Shareholders Agreement executed by Tradescape or the other investors in Tradescape, and [they] never signed any such Shareholders Agreement." (Subash Decl., ¶ 4; Neil Decl. ¶ 4.) They also claim they never received actual certificates for the shares.

Years later, in 2004, Subash Seth apparently sought to refinance his house, requiring him to submit information about his assets to potential lenders. Subash alleges that he asked Amanat at that time for proof that he had "$250,000 coming to me in one form [or] another" as he now phrases the request in his deposition. (Subash Dep. at 28:20.) Amanat apparently directed Subash to Kamran Khan, an employee of the Debtor, and throughout April, 2004, Subash and Khan exchanged many emails. It appears that Subash informed Khan he had never received the Shareholders Agreement, and Khan claimed he had mailed copies to the Seths. (SOF, Exh. 7.) At one point, Subash wrote that he had faxed the signature pages of the Shareholders Agreement on April 21, 2004, and Khan responded that according to the Debtor's records, the Seths were shareholders but that there were technical difficulties printing the physical shares. (SOF, Exh. 8.) Subash admitted that "there was something . . . that Kamran Khan had faxed to me that he needed my signatures on before he could issue any proof for me . . . and I think he might have just faxed me the pages which I was supposed to sign." (Subash Dep. at 32:6-12.)

When shown a form of Shareholders Agreement for Tradescape.com, bearing his and Neil's names but no signatures, Subash asserted he had never signed it. (Subash

3

Dep. at 32:14-33:4.) Neil also claims he never received or signed a copy of a Shareholders Agreement. In a letter dated May 5, 2004, Amanat informed Subash that he should be receiving his stock certificates shortly, but there is no evidence that they were in fact transmitted.

Upon learning of the Debtor's bankruptcy case, the Seths each filed a proof of claim for loss of "investment" in the amount of $250,000. The Movants filed this motion to disallow the claim, and the Seths have responded.

## DISCUSSION

In accordance with Bankruptcy Rule 7056, which incorporates Fed.R.Civ.P. 56, summary judgment may be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Morenz v. Wilson-Coker*, 415 F.3d 230, 234 (2d Cir. 2005). The moving party bears the burden of demonstrating the absence of any genuine issue of material fact, and all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *see also In re Ames Dep't Stores, Inc.*, 161 B.R. 87, 89 (Bankr. S.D.N.Y. 1993). A fact is considered material if it might affect the outcome of the suit under governing law. *See Anderson*, 477 U.S. at 248. "Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

There is no dispute that the claims that the Seths filed are for an equity investment in the Debtor. "It is axiomatic that an allowed proof of claim requires something more than mere equity ownership." *In re USA Commercial Mortg. Co.*, 377 B.R. 608, 615 (9th Cir. BAP 2007). Here, the proof of claim that each of the Seths filed seeks the return of the amount that they paid for stock in the Debtor and nothing more. On the face of it, each of the Seths' claims is marked "investment" and is for an equity investment. Although nothing prohibits an equity security holder from filing a claim for fraud or other damages in connection with the purchase of a security, 377 B.R. at 616, in their proofs of claim the Seths raise no issue of breach of contract or fraud giving rise to damages. For this reason, on this record, the proofs of claim that the Seths filed should be disallowed as such.

In their response to the motion, the Seths have asserted, for the first time, that they are not shareholders because the Debtor never transmitted their stock certificates and because they never signed the Shareholders Agreement, the latter being a condition precedent to the Purchase Agreement. Under New York law, failure of an express condition precedent can result in the contract subject to such condition being unenforceable.[2] *See Catskill Dev., L.L.C. v. Park Place Entm't Corp.*, 154 F.Supp.2d 696, 704 (S.D.N.Y. 2001), citing *Oppenheimer & Co., Inc. v. Oppenheim, Appel, Dixon & Co.*, 86 N.Y.2d 685, 691, 636 N.Y.S.2d 734, 737, 660 N.E.2d 415, 418 (1995). However, when a party engages in conduct inconsistent with enforcing his or her rights, waiver of those rights is implied by law. *See T.G.I. East Coast Constr. Corp. v. Fireman's Fund Ins. Co.*, 600 F.Supp. 178, 181 (S.D.N.Y. 1985); *Dun & Bradstreet Corp. v. Harpercollins Publishers, Inc.*, 872 F.Supp. 103, 110 (S.D.N.Y. 1995) (citing

---

[2] Under ¶ 6(c) of the Purchase Agreement, New York law governs.

5

cases).  Also, the condition precedent in ¶ 5 of the Purchase Agreements could, by its express terms, be waived.  The Movants claim that years of inaction on the part of the Seths constituted a waiver of the condition precedent.  There is no substantial dispute that four years passed before the Seths even requested a signed copy of the Shareholders Agreement and that both Seths had acted in the interim as if they were shareholders.  Despite Subash's claim that he had tried for years to procure the stock certificates, the record does not reveal any such efforts before an email exchange in early 2004.  Neil's account of events states that he began investigating in June 2003, after years had passed without receiving "a single financial statement, a signed completed contract, or any news of the [E*Trade] takeover."  (SOF, Exh. 1.)  On this record, three years of inaction would appear to be enough to constitute waiver of any failure of the condition precedent.  *See Wyman v. Bowman*, 127 F. 257, 266 (8th Cir. 1904); *Mechanics Sav. Bank v. Gish*, 203 N.W. 687, 692 (Iowa 1925); 4 FLETCHER CYC. CORP. § 1525.

There is, however, no need to reach the issue of waiver.  Even if the Seths did not waive the condition precedent, at best (as they argue) New York law gives them a cause of action for damages for failure of the Debtor to sign the Shareholders Agreement.  However, neither in their proofs of claim nor in their papers on this motion do the Seths identify any damages suffered from the Debtor's failure to sign the Shareholders Agreement or, for that matter, from the Debtor's failure to provide them with stock certificates.  Moreover, as the Movants point out, it is patent that any such claim would be subordinated and treated as an equity interest on par with all other equity interests under § 510(b) of the Bankruptcy Code.  Section 510(b) provides that

> a claim arising from rescission of a purchase or sale of a security of the debtor . . . or for reimbursement or contribution allowed under section 502

6

> on account of such a claim, shall be subordinated to all claims or interests that are senior to or equal the claim or interest represented by such security, except that if such security is common stock, such claim has the same priority as common stock.

Section 510(b) does not require that a subordinated claimant be a shareholder. *See In re Med Diversified, Inc.*, 461 F.3d 251, 258 (2d Cir. 2006), citing *In re PT-1 Commc'ns, Inc.*, 304 B.R. 601, 609 (Bankr. E.D.N.Y. 2004); *see also In re Enron Corp.*, 341 B.R. 141, 161 (Bankr. S.D.N.Y. 2006), *In re Walnut Equip. Leasing Co.*, 1999 WL 1271762 at * 6 (E.D. Pa. Dec. 28, 1999). In *PT-1 Commc'ns*, for example, "the claimants did not receive any shares in the company, despite an equity contribution that purportedly secured their right to receive such shares." *In re PT-1 Commc'ns, Inc.*, 304 B.R. at 609. Similarly, in this case, the Seths made an equity contribution and any claim for damages in connection therewith would be subject to § 510(b). Although nothing herein is intended to prevent the Seths from filing a motion to amend their proofs of claim to assert a claim for damages in connection with the failure of the Debtor to sign the Shareholders Agreement and provide certificated shares, there seems to be no doubt that any such claim would arise from the purchase of a security and be subordinated under § 510(b).[3]

---

[3] All of the Movants' defenses to any such motion are also, of course, reserved.

Based on the above, and subject to the proviso in the immediately preceding sentence, the Court grants the Movants' motion and disallows the Seths' proofs of claim as such. The proofs of claim may be deemed to be proofs of interest without the need for further filing. The Movants are directed to settle an order on five days' notice.

Dated: New York, New York
       January 3, 2008

*/s/ Allan L. Gropper*_____
ALLAN L. GROPPER
UNITED STATES BANKRUPTCY JUDGE