**UNITED STATES BANKRUPTCY COURT**          NOT FOR PUBLICATION
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x
In re:                                                      .          Chapter 11
                                                            .
MARKETXT HOLDINGS CORP., *et al.*                           .          Case No. 04-12078 (ALG)
                                                            .
                                             Debtors.       .
-----------------------------------------------------------------x


## MEMORANDUM OF DECISION

A P P E A R A N C E S :

KAYE SCHOLER LLP
Counsel for the Plan Committee
   By:  Lester M. Kirshenbaum, Esq.
       Margarita Y. Ginzburg, Esq.
       Dina S. Rovner, Esq.
425 Park Avenue
New York, NY 10022

WINDELS MARX LANE
& MITTENDORF LLP
Counsel for the Responsible Officer
   By:  Howard L. Simon, Esq.
156 West 56th Street
New York, NY 10019

PULLMAN & COMLEY, LLC
Counsel for Laurence Miller, Keith Miller and Robert Cope
   By:  Irve J. Goldman, Esq.
850 Main St., P.O. Box 7006
Bridgeport, CT 06601

DAVIDOFF MALITO & HUTCHER LLP
Counsel for Laurence Miller, Keith Miller and Robert Cope
   By:  Joshua Krakowsky, Esq.
605 Third Avenue
New York, NY 10158

**ALLAN L. GROPPER**
**UNITED STATES BANKRUPTCY JUDGE**

Before the court is a motion *in limine* filed by the Responsible Officer and Plan

Committee in the above-captioned confirmed Chapter 11 case seeking to exclude certain

evidence offered in support of a proof of claim filed by Keith Miller, Laurence Miller, and

Robert Cope (collectively "Claimants"). For the reasons set forth below, the Objectants' motion

is granted.

## BACKGROUND

The Claimants have filed a proof of claim on behalf of themselves and the "Miller

Trading Group" ("MTG") seeking damages for the breach of a "Broker Agreement" (Claimants'

Ex. 478) entered into between Laurence Miller and Momentum Securities, LLC. The Claimants

allege that the estate of MarketXT Holdings Corporation is liable as the successor to Tradescape

Corporation ("Tradescape"), which was guarantor of the Broker Agreement. The Responsible

Officer and the Plan Committee (collectively "Objectants") have objected to the proof of claim.

The Objectants' motion seeks to exclude certain portions of the direct testimony of

several of Claimants' witnesses as (i) opinion testimony not admissible under Federal Rule of

Evidence 701 and (ii) as irrelevant or unduly burdensome under Rules 402 and 403. Claimants

argue in their response that the relevant testimony is admissible under Rule 701 as lay opinion

based on the witness' personal experience, that the portions said to be inadmissible under Rules

402 and 403 are relevant for the purposes of calculating damages, and that the motion *in limine*

sweeps too broadly and the arguments raised therein should be addressed individually at trial.

The trial on the objection to the Claimants' claim commenced on December 2, 2010. As

of the end of the proceedings on December 23, 2010, declarations setting forth the direct

testimony of Robert Cope, Steven Fleckner, Keith Miller, Laurence Miller, Vedant Mimani,

Anton Penayatov, Richard Reich, and Charles Ian Salvador had been admitted into evidence, subject to possible later exclusion to the extent the motion *in limine* was granted, and the cross-examination and re-direct of each of those witnesses had been completed.[1]

## DISCUSSION

I.     Objection to Lay Opinion Testimony Under Rule 701

The Objectants' motion seeks to exclude, as improper lay opinion under Rule 701, certain direct testimony and exhibits presented by the Claimants in their own declarations and in declarations from several third party witnesses, none of whom was qualified as an expert. The subject matter of the testimony includes the state of the securities markets, the state of the day-trading industry, customs and practices within the day-trading industry, and the alleged potential profitability of the MTG, measured by its own characteristics and by comparison with the performance of allegedly similar groups.

The determination of the motion depends in large part on the application of Fed. R. Evid. 701, which provides that:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Rule 701 allows the admission of non-expert opinion testimony from a witness, within limitations designed to prevent the "simple expedient of proffering an expert in lay witness clothing." Fed. R. Evid. 701, Advisory Committee's Note (2000 amendments). In this case, the Claimants have submitted reports from two proposed expert witnesses, Alan Goldberg and

---

[1] As provided in a pretrial order, all direct testimony has been adduced in declaration form, with live cross-examination and re-direct.

Warren Freistadt. Their application to call a third expert, Joseph Cammarata, was denied.[2] Indeed, the right to call a second expert was a significant concession to the Claimants, and there is no basis on which they can reasonably demand yet another expert. Thus, the proffered testimony cannot be admitted at this late date as expert testimony, and none of the witnesses within the scope of the present motion has been or can be qualified as an expert under Rule 702.

The Second Circuit distinguished between admissible lay opinion testimony and testimony that could only be adduced from an expert in *Bank of China v. NBM LLC*, 359 F.3d 171 (2d Cir. 2004). In that case, Bank of China called an employee to testify as to the nature of certain financial transactions, customary practices underlying such transactions, and whether certain hypothetical dealings would constitute fraud. The Circuit Court held that those portions of the witness' testimony that were based on personal experience gathered in the course of performing an investigation as a Bank of China employee were admissible "so long as the testimony was based on the investigation and reflected his investigatory findings and conclusions, and was not rooted exclusively in his expertise . . . ." However, since the witness was not qualified as an expert, the Court held that all opinion testimony not based on such personal knowledge was inadmissible. *Id*. at 182. Under *Bank of China*, lay opinion testimony is admissible only when based on the witness' direct personal experience, whether or not the expertise of the witness aided his perceptions, and any testimony that is primarily a description of industry custom or an analysis based on specialized knowledge is excludable where the witness has not been qualified as an expert. *Bank of China*, 359 F.3d at 182; *see also In re Perry H. Koplik & Sons, Inc.*, 382 B.R. 599, 603 (Bankr. S.D.N.Y. 2008).

---

[2] Order dated May 28, 2009, Dkt. No. 1648, Case No. 04-12078. Motion denied at a hearing on September 1, 2010, Transcript pg. 21, Dkt. No. 1755.

As a limited exception to the above principle, "most courts have allowed the owner or officer of a business to testify to the value or projected profits of the business, without the necessity of qualifying the witness . . . ." Fed. R. Evid. 701, Advisory Committee's Note, citing *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1174-75 (3d Cir. 1993); *see also Lifewise Master Funding v. Telebank*, 374 F.3d 917, 930 (10th Cir. 2004). However, an owner or officer of a business may provide lay opinion testimony as to its value or lost profits only if the testimony is limited to those opinions derived from the witness' personal knowledge of the business and simple calculations of lost profits by comparison with its historical results. For example, in *Securitron Magnalock Corp. v. Schnabolk,* 65 F.3d 256, 265 (2d Cir. 1995), the Second Circuit held that the testimony of a company's president could be admitted as lay opinion regarding "the company's sales over a period of years, noting a slow-down, and testifying to the estimated losses attributable to the [fraud]." The testimony in that case was supported by an established record of yearly sales growth and decreased sales following the allegedly fraudulent acts. *See also Versai Mgmt. Corp. v. Clarendon Am. Ins. Co.*, 597 F.3d 729, 737 (5th Cir. 2010)(finding testimony of company president admissible to demonstrate lost apartment rental revenue due to hurricane wind damage); *Lightning Lube*, 4 F.3d at 1174-75 (admitting testimony from company president as to lost revenue predictions in tortious interference action based on existing contracts and projected future earnings growth).

By contrast, in *Lifewise Master Funding v. Telebank*, 374 F.3d at 929-30, the Circuit Court excluded the testimony of a company's president as to projections of lost profits based on a damages model prepared in anticipation of litigation because the company's president was not qualified as an expert, and only an expert witness could opine on a damages model that involved "technical, specialized subjects" not appropriate for lay opinion testimony under Rule 701. The

Court distinguished cases such as *Lightning Lube* and *Securitron Magnalock*, where the challenged testimony was based on a simple calculation of decreased sales. *See also Von der Ruhr v. Immtech Intern. Inc.*, 570 F.3d 858 (7th Cir. 2009)(opinion testimony excluded as speculative); *Victor G. Reiling Assoc. v. Fisher-Price, Inc.*, 406 F. Supp. 2d 171, 174 (D. Conn. 2005).

    a.   <u>Objection to Laurence Miller's Testimony</u>

The foregoing principles may be applied as follows with regard to the proffered testimony of Laurence Miller on the issue of the value of the MTG and the lost profits allegedly suffered as a result of the claimed breach of the Broker Agreement. For example, the Objectants seek to exclude Claimants' Exhibit 475 ("Claimants' 475"), referred to at trial as Objectants' Trial Exhibit 321, as well as Miller's direct testimony on that exhibit. Claimants' 475, prepared by Laurence Miller for use at trial, purports to be a damages model based on the revenues of the MTG prior to the date of the Broker Agreement with Tradescape, restated to incorporate the cost basis estimated by the Claimants' proposed expert witness Alan Goldberg to apply under the Broker Agreement. The conclusion invited by Claimants' 475 and by the supplemental declaration of Laurence Miller is that the lost profits are even higher than the amount projected by the Claimants' second proposed valuation expert, Warren Freistadt.[3] The Claimants argue that the testimony is admissible as lay opinion under Rule 701, supported by Miller's experience at the MTG. The Objectants counter that any testimony based on complex lost profits projections or restatements should be excluded as expert testimony not admissible under Rule 701.

---

[3] Miller's testimony, of course, might seem to impeach that of his own expert, but that issue is beyond the scope of the present motion.

Upon consideration of the scope of the analysis and the assumptions inherent in the purported restatement of profits in Claimants' 475, it must be concluded that the exhibit and the testimony of Laurence Miller regarding that exhibit are not proper lay testimony under Rule 701 and amount to a proffer of "an expert in lay witness clothing." Whereas the testimony allowed as lay opinion in *Securitron Magnalock* was straightforward and direct, "based on evidence of decreased sales," the projections Mr. Miller seeks to introduce combine the revenues of a period prior to the Broker Agreement with hypothetical costs for the MTG at Tradescape, based on a model that incorporates the types of assumptions used in an expert report. Like the testimony in *Lifewise*, Miller's testimony goes beyond his "personal knowledge and his experience as [president] of the company" and enters a realm of calculation beyond the pale of lay opinion under Rule 701. *See Lifewise*, 374 F.3d at 930. Miller would have to be qualified as an expert in order to testify on this basis.

Moreover, although the issue need not be reached, based on the record of the trial to date, Laurence Miller's evidence regarding Claimants' 475 would appear to be too speculative to be "helpful to a clear understanding of the witness' testimony or the determination of a fact in issue," as required by Rule 701. Under New York law, which is applicable to the contract at issue, when damages are based on loss of future profits,

> [T]he damages may not be merely speculative, possible or imaginary, but must be reasonably certain and directly traceable to the breach, not remote or the result of other intervening causes. In addition, there must be a showing that the particular damages were fairly within the contemplation of the parties to the contract at the time it was made.

*Kenford Co. v. County of Erie*, 67 N.Y.2d 257, 493 N.E.2d 234, 502 N.Y.S.2d 131 (1986)("Kenford I")(internal citations omitted); *see also Kenford Co. v. County of Erie*, 73 N.Y.2d 312, 540 N.Y.S.2d 1, 537 N.E.2d 176 (1986)("Kenford II"). In *Kenford I*, the Court

assessed the sufficiency of evidence with regard to a jury verdict for lost profits damages under a contract for the operation of a domed stadium. The Court of Appeals held that despite the presentation by recognized experts of economic analysis as to lost profits, the projected damages were too speculative to support a jury award. *Id.* at 261. The Court found that the 20-year period of the forecast inherently involved too much uncertainty, no matter how reliable the expert analysis. *Id.* at 262. Furthermore, the New York court stated, "If it is a new business seeking to recover for loss of future profits, a stricter standard is imposed for the obvious reason that there does not exist a reasonable basis of experience upon which to estimate lost profits with the requisite degree of reasonable certainty." *Id.* (citing *Cramer v. Grand Rapids Show Case Co.*, 223 N.Y. 63, 119 N.E. 227 (1918)).

The Second Circuit has interpreted *Kenford I* to require that, "[E]vidence of lost profits from a new business venture receives greater scrutiny because there is no track record upon which to base an estimate." *Schonfeld v. Hilliard*, 218 F.3d 164, 172 (2d Cir. 2000). In *Schonfeld*, experienced cable television operators sought lost profits damages for the failure of a new television network they had sought to launch. In considering whether the venture was subject to heightened scrutiny as a "new business," the Court noted that despite the historical success of the parties in previous, separate ventures, the parties had never jointly operated a venture together and thus had no historic record of operations that could provide a basis for lost profits projections. *Id.* at 173. The Circuit Court affirmed the District Court's holding that a projection of profits based on a multiplicity of untested assumptions was legally insufficient to support an award of damages. *Id.* at 174.

As stated above, the projections in Claimants' 475 are not based on the actual performance of a business venture but are a composite of revenue from trading operations of a

different group prior to joining Tradescape, overlaid with estimated costs under the Broker Agreement and a projection of the number of traders that, Claimants' assert, Tradescape should have hired.  Furthermore, the projections discuss revenue in the context of assumptions regarding the anticipated profitability of those traders, the retention of additional profitable traders over a period of time, and the profitability of the securities markets themselves.  Whereas in *Securitron Magnalock* the testimony of the company's president was based on actual historical operating data, the projections in Claimants' 475 and the related testimony are projections based on assumptions and calculations.  It might be that an expert could opine on the basis of this data – the determination of this question will await the submission of Mr. Freistat's report.  In any event, and whether or not the MTG should be considered a "new business" under New York law, it is clear that lost future profits must be proven with reasonable certainty and without undue speculation.  The Court cautions that this is a standard which is not satisfied, on the present record, by Claimants' 475 or the testimony of Laurence Miller regarding Claimants' 475.

b.   Objection to Opinion Testimony of Other Witnesses

The Objectants seek to exclude testimony by numerous other witnesses as improper lay opinion beyond the scope of Rule 701 on subjects such as the state of the day-trading industry, the state of the securities markets, customary practices in the day-trading industry, the benefit to traders and a trading group of having more "buying power" available to leverage trading, and the status of the MTG compared to other trading groups.  Without addressing each item of testimony objected to, the Claimants argue that the Objectants mischaracterize the nature of the testimony and that in each instance the opinion given by the witness is within his personal knowledge and proper lay opinion.

As stated above, the Second Circuit's holding in *Bank of China* is controlling as to the distinction between permissible lay opinion and improper testimony under Rule 701. *See also In re Perry H. Koplik & Sons*, 382 B.R. at 599 (applying *Bank of China*). The Claimants do not dispute the controlling standard of law, but rather argue that the testimony is only proffered to prove each witness' own knowledge of the facts to which they are testifying and that no specialized knowledge is necessary to make such observations. The Claimants' repeated refrain is that the witness is merely "relaying his observations and perceptions," and that the testimony in fact provides "examples of permissible opinions from witnesses who spent a substantial amount of time in a particular industry relaying their observations and perceptions."[4]

Under Rule 701 and *Bank of China*, this is not enough, and based on the present state of the record, certain categories of testimony must be excluded as improper lay opinion under Rule 701. Most clearly, any comparison of the MTG to other trading groups for purposes of demonstrating the MTG's profitability or potential for success is a subject reserved for expert testimony. As stated in *In re Charter Communications*, "The art of valuing a business requires the exercise of well-informed judgment." 419 B.R. 221, 235 (Bankr. S.D.N.Y. 2009). In that case, experts from several financial advisory institutions testified on the subject of enterprise valuation employing a variety of methodologies, including comparable companies. In this case, the Claimants will have an opportunity to proffer expert testimony on the subject of lost profits and business valuation. Given the inherently subjective and fact-intensive nature of valuation and projection of profits, however, testimony from non-experts regarding the profitability of the MTG or of other traders and the day-trading industry, the benefit of greater buying power, and the state of the securities markets must be excluded as improper lay opinion.

---

[4] Memorandum in Opposition, pg. 7.

## II.    Objection to Irrelevant or Unduly Burdensome Testimony Under Rules 402 and 403

The Objectants also seek to exclude as irrelevant under Rule 402 or as unduly burdensome under Rule 403 certain testimony, including Claimants' 475, the supplemental declaration of Laurence Miller and statements by other witnesses as to the performance of individual traders and other trading groups.   Under Rule 402, "Evidence which is not relevant is not admissible."  Fed. R. Evid. 402.  Rule 401 defines "relevant evidence" as "having a tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Fed. R. Evid. 401.  Evidence which is relevant may be excluded under Rule 403 if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  Fed. R. Evid. 403.

The Court agrees that non-expert testimony as to the performance of trading groups other than the MTG is irrelevant and unduly burdensome to the extent that it is introduced for purposes of comparison with the MTG, although, as discussed above, any such comparison may be a proper subject for expert testimony.  Non-cumulative evidence regarding the performance of individual traders who were allegedly part of the MTG may be relevant and probative of facts at issue in this case, but projections and comparisons based on any such evidence should be the subject of the testimony of a qualified expert.

## III.    Scope of Objections

The Claimants also oppose the motion *in limine*, in part, on the ground that it is overly broad and that the objections raised therein should be addressed individually at trial, citing *National Union Fire Ins. Co. v. L.E. Myers Co. Group*, 937 F.Supp. 276 (S.D.N.Y. 1996).  In

*National Union Fire*, an insurance company sought to exclude all extrinsic evidence related to the interpretation of certain policy provisions. The Court denied the motion as overbroad, indicating that the motion failed to refer to any particular item of evidence or identify which party intended to offer such evidence and for what purpose. *Id.* at 287. In this case, by contrast, the Objectants have highlighted the portions of the direct testimony declarations to which they object and stated the grounds for each objection. The excerpts identified are sufficiently limited and the scope of the motion is not overbroad. In addition, the present motion has not been considered in isolation, but rather in the context of the proposed testimony of each of the witnesses.

The Claimants have also sought to have each objection raised in the motion addressed individually at trial in order to assure that all the relevant facts are considered in reaching each ruling. The Court has endeavored to do so to date and to provide every opportunity to the Claimants to present evidence in support of their proof of claim. The Claimants will be provided a further opportunity to support the proffered testimony by responding to a settled order, as set forth below.

## CONCLUSION

For the reasons stated, the Court will exclude certain testimony and related exhibits which are improper lay opinion, not probative of the issues in this case, or unduly speculative on the issue of lost profits.  The Objectants are directed to settle an order specifying in an appendix or otherwise the evidence objected to that should be excluded by application of the principles set forth herein.  Such order shall be served on Claimants' counsel on 10 days' notice.  The Court will enter an appropriate order based on the Objectants' proposal and the Claimants' response.

Dated: New York, New York
      January 7, 2011

                           */s/ Allan L. Gropper*
                           UNITED STATES BANKRUPTCY JUDGE